UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

TTMI SARL,

                                    Plaintiff,          Case No.:

            - against -                                 **VERIFIED COMPLAINT**

BYRON SHIPPING LTD,

                                    Defendant.
----------------------------------------------------------------X

        Plaintiff TTMI SARL ("Plaintiff"), by and through its attorneys, Clyde & Co US LLP, as

and for its Verified Complaint against the Defendant BYRON SHIPPING LTD ("Defendant"),

alleges upon information and belief as follows:

        1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and also falls under this Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. § 1333.

        2.      At all times material hereto, Plaintiff was and is a foreign business entity duly

organized and existing under the laws of Switzerland.

        3.      Upon information and belief, at all times material hereto, Defendant was and is a

foreign business entity duly organized and existing under the laws of Gibraltar.

        4.      This action involves claims for damages Plaintiff sustained for demurrage

incurred with respect to the M/T "SEAROSE G" (the "Vessel").

        5.      On or about January 28, 2009, Plaintiff, as Commercial Operator, and Defendant,

as Charterer, entered into a Charter Party pursuant to which Plaintiff chartered the Vessel to

Defendant to transport crude oil from the load port of Novorossiysk, Russia to the discharge port

of Constantza, Romania.  Copies of the Fixture Recap and the Additional Terms to the Charter

Party are attached hereto as Exhibit "A" (together with the referenced Charter Party, the "Agreement").

6.      Pursuant to the Agreement, it was Defendant's responsibility to load and unload the cargo at the load and discharge ports within the 72 hour laytime allowed. *See* Clause 9 of the Additional Terms and item 9 of the Fixture Recap, hereto Exhibit "A."

7.      The agreed rate for demurrage was $24,000 per day. *See* item 10 of the Fixture Recap, hereto Exhibit "A."

8.      Defendant breached the Agreement by failing to load and unload the cargo within the allowed laytime.

9.      Defendant used 4 days and 30 minutes to load and unload the cargo, resulting in demurrage of 1 day and 30 minutes.

10.     As a result of Defendant's breach of the Agreement, Plaintiff suffered damages for demurrage in the total principal amount of $24,193.75, exclusive of interest, costs and attorneys fees, calculated as follows:  1 day, 30 minutes (demurrage) multiplied by $24,000 = $24,500 minus $306.25 commission = $24,193.75.   A copy of the Demurrage & Laytime Report itemizing the demurrage claim is annexed hereto as Exhibit "B."

11.     Defendant breached the Agreement when, without authority and despite due demand, it failed to pay Plaintiff the $24,193.75 due and owing Plaintiff in accordance with the terms of the Agreement.

12.     Plaintiff has complied with all terms and obligations of the Agreement.

13.     The Agreement provides that disputes arising under the Agreement are to be submitted to London Arbitration with English Law to apply.

14.     Plaintiff is in the process of commencing London Arbitration.

15.    Interest, costs and attorneys' fees routinely are awarded to the prevailing party in pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | | |
|---|---|---|---|
| A. | Principal claim | $ | 24,193.75; |
| B. | Estimated interest on claim- | | |
| | 24 months at 6.5% compounded quarterly: | $ | 3,330.00; |
| C. | Estimated attorneys' fees and expenses: | $ | 43,774.30; |
| | Total: | $ | 71,298.05 |

16.    Upon information and belief, Defendant is and during the pendency of this litigation will continue to be engaged in international maritime commerce.

17.    International business transactions such as those engaged in by Defendant in the regular course of its business operations frequently require payments to be made in U.S. Dollars. *See e.g.,* Fixture Recap, item 10, Exhibit "A" hereto, requiring payment of demurrage in U.S. Dollars.

18.    Upon information and belief, because Defendant is and will continue to be during the pendency of this litigation engaged in international commerce, it will continue to enter into business transactions requiring that the payments be made in U.S. Dollars.

19.    Upon information and belief, U.S. Dollar payments made pursuant to international commercial transactions of the type engaged in by Defendant frequently are made via electronic fund transfers in U.S. Dollars.  Approximately 95% of all electronic funds transfers between non-U.S. parties transacting business in U.S. Dollars are made via the Clearing House Interbank Payments System ("CHIPS").  These payments involve routing the electronic

funds transfers through a CHIPS participating bank, usually located in New York City, operating as an intermediary bank, in order to convert the foreign currency into U.S. Dollars.

20.    Upon information and belief, because Defendant is and will continue to be during the pendency of this litigation engaged in international commerce, it will continue to make or receive some or all of the payments involved in that commerce in U.S. Dollars, and some or all of those payments will be made via electronic funds transfers processed through the CHIPS system, and will be routed through a CHIPS participating bank located in New York City (within this District) in order to convert the foreign currency into U.S. Dollars.

21.    Under the law of the Second Circuit, electronic funds transfers to or from a party in the hands of an intermediary bank are considered to be the property of that party and can be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006).

22.    Accordingly, upon information and belief, Defendant has or will have during the pendency of this litigation assets in this District in the form of electronic funds transfers at banks located in this District.

23.    The Defendant cannot be found within this District within the meaning of Rule B but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

24.    The Plaintiff seeks an order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching any assets

of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays as follows:

A.     That process in due form of law issue against Defendant, citing Defendant to appear and answer under oath all and singular the matters alleged in the Verified Complaint failing which default judgment be entered against it in the sum of $71,298.05;

B.     That since the Defendant cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all goods, chattels, credits, letters of credit, bills of lading, effects, electronic fund transfers, debts and monies, tangible or intangible, or any funds up to the amount of $71,298.05 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit, at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E.      That in the alternative, this Court enter Judgment against the Defendant on the claims set forth herein;

F.      That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

G.      That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: October 2, 2009
       New York, New York

CLYDE & CO US LLP

By:
Christopher Carlsen (CC 9628)
405 Lexington Avenue
New York, New York 10174
Tel: (212) 710-3900
Fax: (212) 710-3950
Christopher.carlsen@clydeco.us

Attorneys for Plaintiff

## VERIFICATION

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK   )

1.      My name is Christopher Carlsen.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am a member in the firm of Clyde & Co US LLP, attorneys for the Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my beliefs are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      October 2, 2009
              New York, New York

                                      Christopher Carlsen

Sworn to before me this 2nd day of October, 2009

Notary Public

DANIEL CORRELL
Notary Public, State of New York
No. 02CO6102892
Qualified in Nassau County
Commission Expires Dec. 8, 2011

EXHIBIT A

## Magali, Nicholas

| | |
|---|---|
| **From:** | Thies Petersen - RIVERLAKE SHIPPING SA [petersen@riverlake.ch] |
| **Sent:** | Wednesday, January 28, 2009 12:54 PM |
| **To:** | Hatzimihalis, Michael; shipping@acontiumshipping.com; Gunnar Nordsletten (gunnar.nordstetten@vector-energy.com); Maddock, Christin; Simen.Hauland@vector-energy.com |
| **Cc:** | Operations - RIVERLAKE SHIPPING |
| **Subject:** | SEAROSE G / BYRON CP 28/01/2009 - CHOPT NHC NOVO/CZA L/C 04-05 FEB 2009 - RECAP SUBS LIFTED |
| **Attachments:** | Byron shipping additional terms 05.02.24 - 2 -1 pdf format.pdf; Searose G_Q88.pdf; CERTIFICATES.zip |

```
TO : ACONTIUM SM     ATTN ALEXEY / EVGENY PLS
TO : BYRON SHIPPING ATTN CHRISTIN / SIMEN / GUNNAR PLS
TO : TTMI SARL       ATTN MAKIS PLS
CC : RLS OPS         ATTN JEANNE PLS

WE PLEASED TO SET OUT HEREBELOW TERMS AND CONDITIONS OF FOLLOWING FIXTURE :

ALL SUBJECTS LIFTED

                        CHARTER PARTY
                        =============

CHARTER-PARTY DATE:  28TH JANUARY 2009
CHARTER-PARTY FORM:  EXXONVOY 2000
OWNERS STYLE      :  BHOBO THREE LTD. - MARSHALL ISLANDS

COMMERCIAL OPERATOR:

TTMI SARL
15-17 RUE DE CENDRIER - PO BOX 2078
GENEVA / SWITZERLAND

CHARTERERS:  BYRON SHIPPING LIMITED OF GIBRALTAR


BROKER 1 (COMPANY DETAILS):  RIVERLAKE SHIPPING SA /OPERATOR:
                             JEANNE RAELI EMAIL:  OPERATIONS@RIVERLAKE.CH
BROKER 2                  :


1- DESCRIPTION OF VESSEL  :   SEAROSE G ( AS PER ATTACHED Q88 )



                        ITINERARY / HISTORY
                        ===================

2- PRESENT POSITION AND DETAILED ITINERARY
   (AT TIME OF FIXING)  :

   SPOT ISTANBUL, BUNKERING
```

EXPECTED READY TO LOAD (AT TIME  OF FIXING): ETA NOVO PRIOR LAYCAN

VESSEL EX LAY UP:  NO
IS VESSEL EX DRYDOCK:  YES
LAST 3 CARGOES:    DD / DRY / DRY
LAST CHARTERER:    P&C

LIST OF APPROVALS:
TBOOK WOG VESSEL IS ACCEPTABLE BY AND EXPIRY DATES :

NO APPROVALS


                              DATES
                              =====

3- LAYDAYS COMMENCING :   04TH FEBRUARY 2009 0001 HRS
           CANCELLING :   05TH FEBRUARY 2009 2359 HRS

                      CARGO DESCRIPTION
                      =================

4- CARGO DESCRIPTION: CHARTERERS OPTION TO COMPLETE UPTO FULL CARGO.

   GRADES / SEGREGATIONS:  1/2 GRADES NHC W.V.N.S
   HEAT  (YES / NO ):  NO
   MAINTAINING HEAT (PLS INDICATE TEMPERATURE) : N/A


   OWNERS WARRANT VESSEL LOADS ABT 73,000 MTS BASIS 13,9 M BRACKISH AND SG 0.8668 AT
20DEG C


                          GEOGRAPHICAL
                          ============

5- LOADING:     1SP NOVOROSSIYSK
6- DISCHARGING:  1SP CONSTANZA

                          FINANCIAL
                          =========

7- FREIGHT RATE:  LUMPSUM USD 540,000 BASIS 1-1

8- FREIGHT PAYABLE TO:
   PLS ADVISE

9- LAYTIME:  72 HOURS SHINC

10- DEMURRAGE:  USD  24,000-- PDPR

11- COMMISSIONS:
    5.00 PCT ON FREIGHT/DEADFREIGHT/DEMURRAGE TO BE DEDUCTED FROM FREIGHT

    BREAKDOWN OF COMMISSIONS AS FOLLOWS:
    1.25 PCT ADRESS ON FREIGHT/DEADFREIGHT/DEMURRAGE
    2.50 PCT ACONTIUM SHIPMANAGEMENT ON FREIGHT/DEADFREIGHT/DEMURRAGE
    1.25 PCT RIVERLAKE SHIPPING ON FREIGH/DEADFREIGHT/DEMURRAGE

TERMS
=====

12 -


EXXONMOBILVOY  2000
--------------------
PART 1 OK
(I) AS PER MAIN TERMS - 72 HOURS

PART 2
LINE 114-119 TO REMAIN AS PRINTED

CHANGES TO THE PRINTED EXXONMOBILVOY 2000 FORM:

PART I
A)   DELETE '% MORE OR LESS. VESSEL'S OPTION' AND INSERT 'EXCLUDING SLOPS'
     DELETE 'BARRELS'
     DELETE 'FEET' (TWICE)
     INSERT '10" BEFORE "HOURS"
     DELETE 'IN ALL WEATHER' INSERT '13,5' KNOTS WSNP'
H)   INSERT 'BY TELEGRAPHIC TRANSFER' AFTER 'PAID TO OWNER'
I)   INSERT '72'
J)   DELETE 'SUMMER DEADWEIGHT OF .... METRIC TONS'
K)   AS PER MAIN TERMS


PART II

CLAUSE 1
LINE 10 DELETE 'WITH GANGWAY DOWN AND SECURE'

CLAUSE 2
A)   LINE 19 DELETE HEATING COILS INSERT 'HEAT EXCHANGERS IF APPLICABLE'
C)   LINES 29 AFTER 'DISCHARGE' INSERT MADE KNOWN TO OWNERS PRIOR
     TO FIXING'
D)   LINE 33 INSERT 'DIRECTLY' BEFORE 'ATTRIBUTABLE'

CLAUSE 3
A)   LINE 37 DELETE 'CLEAN' INSERT 'PREPARE'
B)   II)   LINES 44 AND 46.  CHANGE "THE CARGO" TO READ "SUCH
     CARGOES."

CLAUSE 4
A)   LINE 48 REPLACE 'UTMOST' WITH 'DUE'
     LINE 51 CHANGE "LIGHTERING" TO READ "COST OF LIGHTERS."
C)   LINE 62 INSERT 'DIRECT' PRIOR 'DAMAGES'

CLAUSE 5
     LINE 64 DELETE "IN ADDITION" TO END

CLAUSE 6
B)   LINE 78 AFTER "UNLESS" ADD "A LUMP SUM FREIGHT HAS BEEN AGREED OR."

CLAUSE 7
     LINE 96/97 ADD AT THE END 'IN WHICH CASE FREIGHT ON RESIDUES
     SHALL BE PAYABLE AT 100 PERCENT OF THE BASE RATE'

CLAUSE 8

LINE 99-102 DELETE 'OR THE RATE DERIVED... WHICHEVER IS
APPLICABLE'

CLAUSE 9
LINE 118 REPLACE FROM "REPLACEMENT COST..." TO END OF THE
SENTENCE WITH "LAST PAID COST TO BE PAID TOGETHER WITH
FREIGHT BASIS OWNERS EMAILED INVOICE FOR THE TIME/BUNKERS
CONSUMED WITH THE PROPERHARD COPY DOCUMENTS TO FOLLOW"

CLAUSE 12
DELETE AND INSERT
IF IT APPEARS TO OWNERS THAT THE VESSEL WILL BE DELAYED BEYOND THE
CANCELLING DATE, OWNERS WILL NOTIFY CHARTERERS OF THE DATE ON WHICH
THEY EXPECT THE VESSEL TO BE READY TO LOAD WHEREUPON CHARTERERS HAVE
THE OPTION TO CANCEL THIS CHARTER AND SUCH OPTION TO BE DECLARED
WITHIN 24 HOURS, SUNDAYS AND LDN HOLIDAYS EXCLUDED, OF THE RECEIPT
OF SAID NOTIFICATION FROM OWNERS. IN THE EVENT THE OWNERS HAVE GIVEN
SUCH NOTIFICATION AND CHARTERERS HAVE NOT EXERCISED THEIR OPTION TO
CANCEL WITHIN THE STATED PERIOD, THE SECOND DAY AFTER READINESS
STATED IN OWNER'S NOTIFICATION, OR SUCH OTHER DATE AS MAY BE
MUTUALLY AGREED, SHALL BE THE NEW CANCELLING DATE

CLAUSE 13
B)    LINE 168-170 DELETE AND INSERT
'NO EARLY LOADING UNLESS SPECIFICALLY AGREED BY THE
PARTIES'.

CLAUSE 14
B)    LINE 189 DLETE "HALF" INSERT "FULL"
LINE 190-192 DELETE 'THE LISTED CONDITIONS.... SO CO-EXISTED'
AND INSERT 'TIME SHALL COUNT IN FULL'
LINE 196 AMENDED 'LIGHTERED OR DISCHARGED AT SEA' TO READ
'LIGHTERED, LOADED OR DISCHARGED AT SEA'
C)    LINE 198 DELETE 'SPENT OR'
I)    LINE 200 AFTER PILOT INSERT "(HALF TIME TO COUNT)"
II)   LINE 203 AFTER 'INWARD PASSAGE' INS '(AFTER COMPLETION OF
LIGHTER OPERATION, IF APPLICABLE)'
LINE 203 AFTER PILOT INSERT "(HALF TIME TO COUNT)"
LINE 203 AND 204.
IN TWO PLACES BEFORE "ANCHORAGE" INSERT "SHIP-TO-SHIP
OFFSHORE LIGHTERING AREA
(BASIS THE CONTRACT IS CONCLUDED ON A WORLDSCALE BASIS),"
LINE 204 AFTER "LIGHTERING" ADD "OR DELIVERY FROM LIGHTERS."
IV)   LINE 208 INSERT AT THE END 'DELAY CAUSED BY PORT AUTHORITIES
PROHIBITING LOADING/DISCHARGING TO COUNT AS HALF LAYTIME, OR IF
VESSEL IS ON DEMURRAGE AS HALF DEMURRAGE'
INSERT AT END 'ONLY DUE TO VESSELS REASONS'
IV)   DELETE 'LINING UP AND/OR DRAINING OF PUMPS/PIPELINES'
E)    LINE 241 BEFORE "LAYTIME" INSERT "HALF."

CLAUSE 15  LIGHTERING - DELETE

CLAUSE 16
A)    LINE 270 ADD 'AND FULL TIME TO COUNT UNTIL VESSEL IS THUS
ABLE TO PROCEED TO BERTH'

CLAUSE 17
C)    LINE 307 INSERT 'REACHABLE AND PUMPABLE' AFTER 'LIQUID'
LINE 310 INSERT 'REACHABLE AND PUMPABLE' AFTER 'LIQUID'

CLAUSE 18
F)    LINE 340 AFTER "TIME" INSERT "PLUS 3 HOURS FOR STRIPPING.".
      DELETE  '(BE IT ONE OR    MORE GRADES)'
      LINE 340 AFTER "MAINTAIN" INSERT "AN AVERAGE OF"
      LINE 341 DELETE "RAIL" INSERT "MANIFOLD"
      LINE 341 AFTER "PERMIT" ADD "EITHER ONE, IT IS UNDERSTOOD
      THAT PERIODS FOR STRIPPING AND/OR COW SHALL BE EXCLUDED FROM
      THE AFORESAID DISCHARGE WARRANTIES."
H)    LINE 358 AFTER 'DISCHARGE' INSERT 'WHICH IS PUMPABLE AND
      REACHABLE BY VESSEL'S FIXED EQUIPMENT'

CLAUSE 19 - DELETE ENTIRE CLAUSE

CLAUSE 20
A)    LINE 371 AFTER "UNLESS" ADD "A LUMPSUM FREIGHT HAS BEEN AGREED OR."
      LINE 374 DELETE 'ARRANGED' AND INSERT
      'VESSEL SHALL NOT BE REQUIRED TO TRADE IN ICE, OR FOLLOW ICE
      BREAKERS'

CLAUSE 22 - DELETE ENTIRE CLAUSE

CLAUSE 25
      LINE 415 AFTER 'LENGTH OF VOYAGE' INSERT 'AND WEATHER AND/OR
      SEA CONDITIONS'

CLAUSE 27
A)    LINE 427 DELETE 'CHARTERER'S OPTION' AND INSERT 'OWNERS'
      OPTION'

CLAUSE 28
B)    DELETE
C)    DELETE

CLAUSE 31
      LINE 593 ADD AFTER 'AND PLACE (S)' ADD 'PROVIDED COMPETITIVE'
      LINE 595 AFTER 'PLACE(S)' 'AGENTS AT LOAD BARWIL, AND AGENTS AT
      DISCHARGE ROMPETROL' - CHARTERERS AGENTS TO WORK COOPERATIVE WITH
      OWNERS PROTECTIVE AGENT.

CLAUSE 33
B)    LINE 635 ADD "AND WITH HER CARGO TANKS INERTED, UNLESS
      OTHERWISE INSTRUCTED"

CLAUSE 36
      LINE 657 AFTER 'WITH' INSERT 'ALL'

OWNERS AMENDMENTS TO CHARTERERS TERMS
-------------------------------------------
CL 1 . OK
CL 2 . AT END OF PARA 1 INSERT "HOWEVER OWNERS / MASTER DO NOT
       GUARANTEE THE OUTCOME OF THIS OPERATION"
       AT END OF PARA 2 INSERT  "IDEMNITY SHALL BE IN THE FORM OF
       AN LOI AS PER OWNERS P AND I CLUB WORDING"
CL 3 . OK
CL 4 . OK
CL 5 . 1. INSERT AT END "UNLESS LOCAL RULES ALLOW SAFE TRANSIT
       WITHOUT PILOTS"
CL 6 . DELETE N/A
CL 7 . DELETE N/A
CL 8 . DELETE

```
        INSERT AT END "ALL APPROVED EQUIPMENT INC MOORING MASTER
        SHALL BE FOR CHARTS ACCOUNT.
        TIME AT LIGHTERING POSITION TO START COUNTING UPON VESSELS
        TENDERING NOR AND END WHEN LIGHTERING VESSEL MOVES AWAY"
CL 9 .  -1 DELETE 'STB'
        -7 ADD 'IF AVAILABLE'
        -8 ADD 'IF AVAILABLE'
        DELETE LAST SENTENCE FROM 'FAILURE TO RECEIVE' .... TILL 'BEING BARRED.'


CL 10. OK
CL 11. OK
CL 12. OK
CL 13. DELETE, APPLICABLE FOR VOYAGES UNDER LUMPSUM ONLY
CL 14. OK
CL 15. OK
CL 16. OK
CL 17. OK
CL 18. OK
CL 19. OK
CL 20. INSERT AT END "MAX 5 DAYS AWAITING FOR ORDERS"


ADDITIONAL OWNERS CLAUSES
- - - - - - - - - - - - - - - - - - - - - - - - -


ANY TAXES AND/OR DUES ON FREIGHT AND/OR CARGO [INCLUDING TURKISH TAXES] TO BE FOR
CHARTERERS ACCOUNT AND SETTLED BY THEM DIRECT.


OWNERS WEATHER CLAUSE
- - - - - - - - - - - - - - - - - - - -
IF DISCHARGING FALCONARA/FIUMICINO/RAVENNA/GAETA/LA NOUVELLE/ ANCONA/SPANISH
ATLANTIC/PORTUGAL AND/OR IF LIGHTERING/LIGHTENING/ TRANSHIPMENT TAKES PLACE AT ANY
LOCATION AND / OR IF LOADING/DISCHARGING VIA A SEALINE, SEABERTH/SEABUOY ANY DELAYS
DUE TO WEATHER / SEA CONDITIONS INCL FOG AND SWELL TO COUNT IN FULL AS LAYTIME OR
DEMURRAGE IF VSL IS ON DEMURRAGE AND ANY UNBERTHING/REBERTHING EXPENSES DUE TO
WEATHER CONDITIONS AT THE ABOVE MENTIONED PORTS/PLACES TO BE FOR CHRTS ACCOUNT.
OTHERWISE CONOCO WEATHER CLAUSE TO APPLY.


MAX 3 HRS AWAITING CGO DOCS TO BE FOR OWNERS A/C.


SUBSTITUTION CLAUSE
- - - - - - - - - - - - - - - - - -
OWNERS OPTION TO SUBSTITUTE SIMILAR SISTERSHIP,ALWAYS SUBJECT TO CHARTERERS
APPROVAL,WHICH NOT TO BE UNREASONABLY WITHHELD.


TURKISH STRAITS CLS
- - - - - - - - - - - - - - - - - -
ANY DELAY/WAITING IN PASSING THE TURKISH STRAITS NORTH BOUND EXCEEDING 48 HOURS IN
TO BE PAID AT
DEMURRAGE RATE AND THE COST OF BUNKERS CONSUMED DURING SUCH ADDITIONAL TIME
TOGETHER WITH ANY EXTRAORDINARY EXPENSES IN
CONNECTION WITH COMPLYING WITH CHARTERERS' VOYAGE ORDERS AND TURKISH AUTHORITIES
REGULATIONS AND/OR RECOMMENDATIONS
AS REGARDS THE TURKISH STRAITS (I.E. ADDITIONAL TUGS, PILOTS ETC.) TO BE FOR
CHARTERERS' ACCOUNT.
ALL ABOVE TO BE PAID TOGETHER WITH FREIGHT WITH SUPPORTING DOCUMENTS TO FOLLOW.
OWNERS TO APPOINT THEIR AGENTS, WHEN PASSING THE TURKISH STRAITS.


IF VESSEL IS DELAYED BY REASON OF DELAYS IN PASSING THE TURKISH STRAITS NORTHBOUND
THE SAID
CANCELLING DATE SHALL BE EXTENDED BY ANY TIME SO DIRECTLY LOST. ABOVE ONLY APPLIES
```

IF VESSEL
ARRIVES BEFORE 03RD FEB 2009

FRENCH STRIKE CLAUSE
- - - - - - - - - - - - - - - - - -
ALL TIME LOST IN FRANCE BERTHING AND OR DISCHARGING DUE TO STRIKES AND/ OR LOCKOUTS
BE THEY OFFICIAL
OR UNOFFICIAL INCLUDING STRIKES INVOLVING TUGS AND/OR PILOTS TO COUNT AS FULL
LAYTIME OR DEMURRAGE
IF ON DEMURRAGE.

ARBITRATION CLAUSE
- - - - - - - - - - - - - - - - - -
ARBITRATION IN LONDON/ENGLISH LAW TO APPLY
AS PER LMAA REGULATIONS CURRENTLY AT TIME OF PROCEDURE

UKRANIAN PORTS
- - - - - - - - - - - - - - -
IF LOADING/DISCHARGING AT/OFF UKRAINIAN PORT(S) THEN ANY PENALTIES IMPOSED BY
ENVIRONMENTAL CONTROL AUTHORITIES IN RELATION TO WATER BALLAST AT LOADPORT TO BE
FOR CHRTS ACCT PAYABLE WITH FREIGHT AGAINST OWNERS TELEXED INVOICE WITH FULL
DOCUMENTS TO FOLLOW. OWNERS TO ENSURE VSL ALWAYS COMPLIANT WITH IMO REGULATIONS IN
RESPECT OF BALLAST WATER EXCHANGE.

CLINGAGE CLAUSE
- - - - - - - - - - - - - - - -
IF THE VESSEL IS EX LAY-UP, EX DRY-DOCK OR HER LAST CARGO IS DRY, A VALUE OF CARGO
AS WELL AS FREIGHT AND INSURANCE WITH RESPECT THERETO FOR ANY SHORT OUTTURN CARGO
QUANTITY, (AS DETERMINED BY OWNER'S SURVEYOR BY COMPARING THE BILL OF LADING
QUANTITY AGAINST THE DISCHARGED QUANTITY BASED ON SHORE TANKS GAUGING PROVIDED
TERMINAL'S LINES ARE FULL AS DETERMINED BY OWNERS SURVEYOR),   CLAIM FROM OWNERS TO
THE EXTENT THAT SUCH QUANTITY EXCEEDS 0.4 PERCENT OF THE BILL OF LADING QUANTITY.


E N D

THANKS VM


BEST REGARDS THIES

**DISCLAIMER**
This E-mail is private and confidential and may be covered by legal professional privilege. It is
therefore only intended for the addressee(s). If you are not one of those persons you must not
read, copy, store, disclose, use or distribute its contents. Please also contact the sender
immediately and delete the original.

Byron shipping Ltd of Gibraltar additional
terms 1 to 20 to Exxonmobilvoy 2000

## Summary:

Amendments to part 1 and part 2 of Exxonmobilvoy charter party

1. Address commission clause
2. Blending clause
3. Charter party administration clause
4. Itf clause
5. Turkish straits clause
6. U.s. customs regulations clause
7. Vgo cleaning clause
8. Lightering clause
9. Demurrage claim clause
10. Overage clause
11. Loi invocation clause
12 ExxonMobil isps clause
13: Interim port clause
14. Nor clause
15. Privacy clause
16. Adherence to voyage instructions clause
17. Cargo transfer clause
18. Statement of facts clause
19. Casualty report clause
20.Waiting for orders clause

PART 1
(a) Replace 'in all weather' by 'about' and replace 'laden' by 'weather and safe navigation permitted'
(i) Insert '84' (eighty-four)'

PART 2
Line 114-119: replace as from 'if a change to ....'' till ''...are next taken'' by:
''Charterers to pay for any interim load- / discharge port(s) at cost including additional steaming time for deviation exceeding direct route from first load port to furthest discharge port.
Such deviation time together with time in port shall count as laytime or demurrage, if vessel is on demurrage, plus bunkers consumed during steaming time as per master's telexed statement plus port expenses as per agent's telexed disbursement account. Time used for deviation, bunkers so consumed and port expenses shall be paid together with freight against owners telexed invoice. Owners later to supply hardcopy documents''.

Line 174 + 176: amend to 'three (3)'
Line 492: after 'of this clause' insert 'or should the discharging port(s) be different than stated in the original bill(s) of lading'
Line 495: delete 'meet the requirements of paragraph (e) of this' and insert 'be as per owners P and I club wording signed by an authorized officer of charterers. It is understood that no bank guarantee is required'
Line 496-531: delete

## 1. ADDRESS COMMISSION CLAUSE

Charterers shall deduct an address commission of one point two five percent (1.25%) from freight, deadfreight and demurrage payable under this charter.

## 2. BLENDING CLAUSE

Charterers shall have the option to blend the cargo onboard the Vessel, provided that such blending is within the technical capability of the Vessel and that the Master considers it safe to do so.

Charterers indemnify the owners, vessel and Master against liability for any cargo quality claims that may arise as a direct result of this onboard blending, including cargo quality claims from a third party.

Any additional charges that result directly from charterers exercising this onboard blending option, including demurrage, port charges, extra agency fees, consumed bunkers at documented replacement cost, etc., and which are not included in the freight agreed under Part I (G) of this Charter Party, shall be for the account of charterers. Charterers will surrender to Master all original Bills of Lading for the unblended cargo and the Master will provide new consolidated Bills of Lading on completion of blending operations, which Bills of Lading will reflect the actual grade that has been blended.

## 3. CHARTER PARTY ADMINISTRATION CLAUSE

Charter party terms and conditions are evidenced by the fixture confirmation cable, telex, electronic mail or facsimile approved (by answering cable, telex, electronic mail, facsimile) by both owners and charterers. Except as requested in writing by either owners or charterers, there shall be no formal written and signed charter party.

## 4. ITF CLAUSE

Owners warrant that the Vessel fully complies with all ITF requirements and that the Vessel has a valid ITF certificate or equivalent on board.

## 5. TURKISH STRAITS CLAUSE

The vessel is required to strictly follow the guidelines prepared by the Turkish government for the safe transit of the Turkish straits (the Turkish straits Maritime Traffic Scheme regulations). The most notable requirements are:

1-All vessels transiting the Turkish straits must use a pilot
2- All transits must occur during daylight and with visibility of at least one mile

## 6. U.S. CUSTOMS REGULATIONS CLAUSE

Owners warrant that in accordance with 19 CFR SS 4.7A and 178.2, as amended, it has a standard carrier ALPHA (SCAC) which will prefix a Bill of Lading serial number and form a "unique identifier" to be entered on all Bills of Lading, cargo manifests, cargo declarations and other cargo documents relating to carriage of goods to the United States as may be provided for hereunder. Charterers are not responsible for any losses or delays resulting from owners' failure to comply with the foregoing.

## 7. VGO CLEANING CLAUSE

Owners warrant that Vessel, upon arrival load port, will have fresh water cleaned all cargo carrying compartments, pipes, pumps, and lines, and that the Vessel will be in all respects suitable for the carriage of vacuum gas oil utilizing the following operations:

A. During the voyage to or at load port, all cargo tanks, pumps and lines to be rinsed with fresh water, drained and stripped dry so that neither sodium nor sulphur contamination should exist. This will include the removal from the cargo tanks of all excess water, bottom sediments and residues of previous cargoes.

B. All sea suctions and other outboard valves connected to the cargo system must be sealed before and during loading. Any delays as a result of Vessel not meeting charterers' inspection satisfaction for cleaning at load port, shall be for owners' account and time not to count as laytime, or if vessel is on demurrage, as time on demurrage.

## 8. LIGHTERING CLAUSE

All lightering operations are to be conducted as per the latest OCIMF standards for ship to ship transfers. Lightering location(s) and lightering vessel(s) shall be approved by or disponent owners, but same is not to be unreasonably withheld.

## 9. DEMURRAGE CLAIM CLAUSE

It is the charterers' intention to pay demurrage due on a timely basis and for this purpose, a listing of the supporting documentation to be included with the demurrage claim has been set forth as below

For purposes of demurrage under this charter party and with reference to Part II, clause 36, supporting documentation, duly signed with authorized signatures, for demurrage claims shall include but not be limited to the following:

1. Completed STB Port Log for each port
2. Notice of Readiness message at all port(s)/berth(s)
3. Bills of Lading for co-loads and parcel tankers
4. Notes of protest given and/or received by the vessel
5. Pumping logs
6. Crude Oil Washing logs (if applicable)

7. Statement of facts/Port logs/Terminal time sheets
8. Agents' time sheets

Failure to receive all of the above documentation in the standard format prior to the time bar date will result in the claim being barred.

## 10. OVERAGE CLAUSE
Part 1 (G) "Overage Freight Rate" insert: "50 % of the applicable freight rate"

## 11- LOI INVOCATION CLAUSE
Discharging port(s) or range(s), shown in bill(s) of lading not to constitute a declaration of discharge port(s) or range(s) and charterers to have the right to order the vessel to any port or place within the terms of this charter.

If and when specifically instructed to do so by charterers, owners agree to release the cargo onboard in the following cases:

a-. If no original bill of lading is available at discharge port(s)

Or:

b-. If vessel is ordered to discharge in a port or place other than the destination shown in the bill of lading in consideration of owners complying with charterers' specific instructions as above, charterers shall, upon giving formal notification to owners, invoke owners' P and I club wording.

The above indemnity shall automatically become null and void upon presentation of one out of three relevant bills of lading, or 13 (thirteen) months after completion of discharge of cargo to which such indemnity refers, always provided no legal proceedings have been instituted against owners.

## 12. EXXONMOBIL ISPS CLAUSE
a.    This clause applies to all ports where either of the following security regulations ("security regulations") is in effect:

1.    International ship and port facility security (Isps) code

2.    U.s. maritime transportation security act of 2002

b.    Any delays to the vessel at ports of loading or discharge due to the failure of the vessel to comply with the security regulations shall be for owners' account except where such delays are directly attributable to charterers' failure to timely provide information required by the security regulations, in which case, the delays shall count as laytime or, if the vessel is on demurrage, as time on demurrage.

c.     If demurrage is incurred under the charter and the vessel has been delayed in berthing, loading and/or discharging for any reason attributable to security regulations other than stipulated in section b, above, such delay shall be deemed a listed condition under paragraph 14(b) of the charter and that span of time on demurrage equal to the period(s) of delay described in this section c shall be paid at half rate.

d     Expenses solely attributable to security regulations not otherwise specifically allocated in the charter and / or Worldscale shall be apportioned between owners and charterers consistent with the apportionment of delays set forth in sections b. and c. above.

## 13: INTERIM PORT CLAUSE

Charterers to pay for any interim load / discharge port(s) at cost including additional steaming time for deviation exceeding direct route from first load port to furthest discharge port. Such deviation time together with time in port shall count as laytime or demurrage, if vessel is on demurrage, plus bunkers consumed during steaming time as per master's telexed or E-mail statement plus port expenses as per agent's telexed or E-mailed disbursement account. Time used for deviation, bunkers so consumed and port expenses shall be paid together with freight against owners telexed or E-mailed invoice. Owners later to supply hardcopy documents.

## 14. NOR CLAUSE

Vessel not to tender notice of readiness prior to commencement of laydays unless otherwise agreed.

## 15. PRIVACY CLAUSE

All details of the fixture will have to be kept strictly private and confidential, unless both - charterers and owners have no objection to the fixture being reported.

## 16. ADHERENCE TO VOYAGE INSTRUCTIONS CLAU

The owners shall be responsible for any time, costs, delays or loss suffered by the charterers due to failure to comply fully with charterers' voyage instructions. The owners shall be responsible for any time, costs, delays or loss associated with vessel loading cargo quantity in excess of voyage orders.
Additionally, the charterers shall not be responsible for any deadfreight due to owners' failure to lift minimum quantity specified in voyage orders.

If a conflict arises between terminal orders and charterers' voyage instructions, the master shall stop cargo operations and contact the charterers immediately. The terminal orders shall never supersede charterers' voyage instructions and any conflict shall be resolved prior to resumption of cargo operations.

## 17. CARGO TRANSFER CLAUSE

At no time during the voyage shall cargo be transferred between vessel's tanks without the express consent of the charterers. Such consent shall be requested by means of written telex or radio communication, specifying loaded and revised ullages and cargo quantities for the tanks

concerned and reasons necessitating a cargo transfer. Charterers' consent shall not be unreasonably withheld and shall be provided expeditiously by written telex. Master to confirm to the charterers that operation has been carried out.

In the event transfer of cargo is unavoidable for emergency reasons involving risk to vessel's structural integrity or safety of life or for safe navigation, the prior consent of the charterers shall not be required. However, the master shall inform the charterers of any such transfer and of circumstances that necessitated it as soon as possible thereafter.

## 18. STATEMENT OF FACTS CLAUSE
In order to be considered an authorized document, statements of facts must be signed by the master of vessel, vessel's agents, suppliers or receivers, if possible. If not possible, then master to issue a letter of protest to the dissenting party, submitted together with owners' demurrage claim.

## 19. CASUALTY REPORT CLAUSE
In the event that the vessel is involved in a collision, grounding, fire explosion, spillage or any other incident / accident which causes damage to the vessel or the port or the terminal and is likely to affect the shipment of the cargo under this charter-party, a third party and / or generate media attention, then master and owners are to advise charterers immediately.

## 20. WAITING FOR ORDERS CLAUSE
If charterers require vessel to interrupt her voyage awaiting further orders, such delay to be for charterers' account and shall count as laytime or demurrage, if vessel on demurrage.

End

24 February 2005

EXHIBIT B



# CLYDE&CO
## Demurrage & Laytime Department

| | |
|---|---|
| Vessel: | Searose G |
| Date: | 12-Feb-09 |
| Charterer: | Byron |
| Owners: | TTMI Sarl |
| Case No | 501624 |
| Author: | MZL |

| | |
|---|---|
| Load Port: | Novorossiysk |
| Discharge Port: | Constantza |
| Cargo: | Crude Oil |
| Laytime Allowed: | 72 Hours |
| Arrival Load Port: | 03/02/2009 08:00 |
| Complete Load Port: | 06/02/2009 03:30 |
| Arrival Discharge Port: | 07/02/2009 13:10 |
| Complete Discharge Port: | 09/02/2009 17:30 |

| | |
|---|---|
| Demurrage: | $24,000.00 USD/day |
| Laycan: | 04-05/02/09 |
| Charterparty: | ExxonMobilevoy |
| C/P Date: | 28/01/2009 |
| B/L Date: | 05/02/2009 |
| Commissions: | 1.25 % |

| | |
|---|---|
| Time Used at Load Port: | 02 Days  00:24 Hours:Mins |
| Time Used at Discharge Port: | 02 Days  00:06 Hours:Mins |
| Total Time Used: | 04 Days  00:30 Hours:Mins |

Time Allowed:  03 Days  00:00 Hours:Mins

Demurrage  01 Days  00:30 Hours:Mins  x  $24,000.00  =  $24,500.00

| | | |
|---|---|---|
| Demurrage: | | $24,500.00 |
| Commissions: | 1.25 % | $306.25 |
| Total: | | $24,193.75 |

# CLYDE&CO Demurrage and Laytime Department

**Vessel Name** Searose G
**C/P Form** ExxonMobilvoy
**Dem. Rate** $24,000.00
**Time Allowed** 36 Hours

C/P Dated 28/01/2009

**Load Port:** Novorossiysk

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| 03/02/2009 08:00 | V/L Arrived | | |
| 03/02/2009 14:15 | NOR Tendered | | |
| 03/02/2009 18:30 | All Fast | | |
| 03/02/2009 20:42 | Gangway Down | | |
| 04/02/2009 00:06 | Commence Loading | X | 47 Hrs 54 mins |
| 06/02/2009 00:00 | Hoses Disconnected | X | 3 Hrs 30 mins |
| 06/02/2009 03:30 | Cargo Documents Onboard | | |

Deductions:

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| 06/02/2009 00:00 | Cargo Documents Allowance | | |
| 06/02/2009 03:00 | Finish Cargo Allowance | | 3 Hrs 0 mins |

Load Port time used inc deductions          48 Hrs 24 mins

Total Time Used inc deductions          48 Hrs 24 mins

Loadport - Novorossiysk

CLYDE&CO Demurrage and Laytime Department

| | |
|---|---|
| **Vessel Name** | Searose G |
| **C/P Form** | ExxonMobilvoy |
| **Dem. Rate** | $24,000.00 |
| **Time Allowed** | 96 Hours |

C/P Dated 28/01/2009

**Discharge Port:** Constantza

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| 07/02/2009 13:10 | V/L Arrived within Port Limits | | |
| 07/02/2009 14:45 | NOR Tendered | | |
| 07/02/2009 17:24 | All Fast | | |
| 09/02/2009 17:30 | Hoses Disconnected | x | 48 Hrs   6 mins |

**Deductions:**

| Date & Time | Remarks | Use | Time Used |
|---|---|---|---|
| | | | |

| | | |
|---|---|---|
| Discharge Port time used | | 48 Hrs   6 mins |
| Total time used inc. deductions | | 96 Hrs   30 mins |

Discharge Port - Constantza

# *INVOICE*

## *TTMI Sarl*

c/o Clyde & Co
51 Eastcheap
London
EC3M 1JP

| | |
|---|---|
| Invoice#: | MZL398565016 |
| C/P date#: | 28/01/2009 |
| Date: | 12-Feb-09 |

**BYRON SHIPPING LIMITED OF GIBRALTAR**

Attn:    **Demurrage Department**

Please find the following demurrage claim for the voyage described below:

Demurrage incurred by the vessel:    Searose G

Voyage:         Novorossiysk to Constantza
C/P Date:       28/01/2009
Product:        Crude Oil

## Total Amount Due:        $24,193.75     (Net)

PAYMENT: UPON RECEIPT

KINDLY QUOTE VESSEL NAME WHEN REMITTING

Beneficiary: TTMI Sarl c/o Clyde & Co LLP
NATIONAL WESTMINSTER BANK
City of London Office
PO Box 12258
1 Princes Street
London EC2R 8PA
SWIFT:    NWBKGB2L
BIC:       NWBKGB2102N

Intermediary Bank:
J P Morgan Chase Bank
New York
NY10081 USA
SWIFT:    CHASUS33
BIC:       CHASUS33XXX

US$ Account No. 140-02-00728764
Sort Code: 60-00-01
Our Ref:  Searose G/ MZL / 0405716